IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHERVON DESMOND, et al. | : | |
| | : | |
| v. | : | Civil No. CCB-14-3499 |
| | : | |
| ALLIANCE, INC. | : | |
| | : | |

## MEMORANDUM

Plaintiffs Shervon Desmond, Natasha Foreman, Christy King, Lydia Lashley, Andrea Swann, and Dawn Tucker worked as Residential Rehabilitation Coordinators ("Coordinators") and Lead Residential Rehabilitation Coordinators ("Leads") for defendant Alliance, Inc. ("Alliance"), a non-profit organization that provides community-based services to people with mental illnesses and developmental disabilities. This case concerns the plaintiffs' suit against Alliance for minimum and overtime wages they allege Alliance unlawfully withheld. Before the court is the plaintiffs' motion for conditional certification of a Fair Labor Standards Act ("FLSA") collective action, and for the court's assistance in identifying and notifying similarly situated employees. For the reasons that follow, the motion will be granted.

## BACKGROUND

Desmond, King, Lashley, and Tucker filed suit on November 6, 2014, raising minimum wage and overtime claims under the FLSA, 29 U.S.C. § 201 *et seq.*, and the Maryland Wage and Hour Law, Md. Code, Lab. & Empl. § 3-401 *et seq*. Foreman filed notice of her consent to become a party plaintiff on January 15, 2015, and that same day the plaintiffs moved for conditional certification under 29 U.S.C. § 216(b), and for the court's assistance in identifying

1

and notifying similarly situated employees. Swann filed notice of her consent to become a party plaintiff on February 20, 2015. Alliance opposed the plaintiffs' motion on February 23, 2015. The facts as stated below come primarily from the plaintiffs' declarations, which they attached as support for their motion.

Alliance has six Maryland locations in addition to its corporate office in Dundalk, though the plaintiffs all worked at Alliance's Harford County location in Belcamp. The plaintiffs worked as Coordinators and Leads in Alliance's Residential Rehabilitation Program ("RRP");[1] several began as Coordinators and were later promoted to Leads. In both capacities, they assisted in the rehabilitation of individuals with special needs who resided at Alliance locations. To that end, they connected Alliance's clients with services in the community, maintained the clients' medical charts, and tracked the services clients received.

The plaintiffs say they had a very heavy workload, which arose from both the broad scope of their responsibilities and from understaffing. The plaintiffs' responsibilities included responding to clients in emergency situations such as a suicide threat, and overseeing other Alliance employees such as Residential Rehabilitation Counselors ("Counselors"). Alliance regularly required the plaintiffs to attend work meetings before or after their scheduled shifts. Further, Alliance provided the plaintiffs with an "on-call" cellular phone so Alliance could reach them before and after their scheduled shifts, or on weekends, for work-related responsibilities.

As to understaffing, the plaintiffs say that Alliance did not hire enough Counselors. Counselors were responsible for driving Alliance's clients to various appointments; because there were not enough of them, however, the plaintiffs regularly drove clients to their

---

[1] The plaintiffs do not reference the RRP in their declarations, but acknowledge its existence in their reply brief. (Reply 3, ECF No. 23.)

appointments and waited there until the appointments ended, often before the plaintiffs' shifts were scheduled to begin. In addition, Alliance did not hire enough Coordinators, causing the caseloads of Coordinators and Leads to increase. Because of their heavy workload, the plaintiffs often had to bring work home and do it there.

Alliance informed the plaintiffs when their employment began that they would work five days per week, for a total of 40 hours. Nevertheless, the plaintiffs often worked through lunch and late into the evening, and their weekly hours usually totaled more than 40. According to the plaintiffs, their supervisors instructed them not to fill out their time sheets to reflect more than 40 hours worked per week. In lieu of overtime pay, the plaintiffs' supervisors told them a "flex time" plan would allow them to take off a day they were scheduled to work. But the plaintiffs were rarely able to take off this extra day because of the demands of their employment. Further, except on a few occasions, Alliance did not compensate the plaintiffs for overtime hours worked despite their regular submission to Alliance of "service tickets" that documented those hours. Through discussions with other Alliance employees including those who worked at locations other than the one in Belcamp, the plaintiffs say they know that other Coordinators and Leads also worked overtime but were denied overtime pay.

## ANALYSIS

### I. Conditional Certification

Under the FLSA, a collective action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). After the initial complaint is filed, other similarly situated employees may become party plaintiffs by giving "consent in writing to become such a party and

such consent is filed in the court in which such action is brought." *Id.* Thus, § 216(b) "establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008). "When deciding whether to certify a collective action pursuant to the FLSA, courts generally follow a two-stage process." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012). "In the first stage, commonly referred to as the notice stage, the court makes a 'threshold determination of whether the plaintiffs have demonstrated that potential class members are similarly situated, such that court-facilitated notice to the putative class members would be appropriate.'" *Id.* (quoting *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010) (some internal quotation marks omitted)). "In the second stage, following the close of discovery, the court conducts a 'more stringent inquiry' to determine whether the plaintiffs are in fact 'similarly situated,' as required by § 216(b)." *Id.* (citation omitted).

Thus, the central question here is whether the plaintiffs have proffered enough for the court to make the threshold determination that they are similarly situated to a group of potential plaintiffs. Similarly situated does not mean identical. *Id.* "Rather, a group of potential FLSA plaintiffs is 'similarly situated' if its members can demonstrate that they were victims of a common policy, scheme, or plan that violated the law." *Id.* To meet their burden at this stage, the plaintiffs must make "a relatively modest factual showing" to that effect. *Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 575 (D. Md. 2014) (internal quotation marks omitted). "Mere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made." *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000). Employees cannot reasonably be expected, however, to have evidence of a stated

policy of refusing to pay overtime. *Quinteros*, 532 F. Supp. 2d at 772.

The plaintiffs ask the court to conditionally certify a class of all Coordinators and Leads who have worked for Alliance at any of its Maryland locations from November 2011 to the present. They offer six affidavits from five party plaintiffs as support,[2] and argue that the party plaintiffs are similarly situated to all of Alliance's Coordinators and Leads. Alliance argues in response that Coordinators and Leads are not similarly situated to each other because the responsibilities of those positions differ. In the alternative, Alliance argues that the class should be limited to Coordinators and Leads who worked at Alliance's Belcamp location.

Through their declarations, the plaintiffs have made the necessary "modest factual showing" that they are similarly situated to other Coordinators and Leads. The plaintiffs' detailed declarations suggest they performed the same job duties, and explain how overwork and understaffing caused them to work more than 40 hours per week. They say they were required to attend work-related meetings before or after their scheduled shifts, and were frequently forced to do work at home because they could not complete it during their shift. They attest that their supervisors knew they often worked more than 40 hours per week because they submitted "service tickets" documenting their overtime hours, and because they expressly asked to be paid for those hours. But, they say, their supervisors told them they would not be paid overtime even if they worked more than 40 hours. They say they know that other Coordinators and Leads were not paid for overtime hours worked, and were also instructed to fill out their time sheets to show 40 hours even if they worked more. In particular, King attested that at company-wide meetings she discussed these issues with other Coordinators, including those who worked at Alliance facilities other than the Belcamp facility, and these individuals indicated that they were subject to

---

[2] The plaintiffs' opening brief included declarations by Foreman, King, and Tucker. The plaintiffs' reply included declarations by Desmond and Swann, and a second declaration by King.

the same unlawful practices.  (King Decl. ¶ 6, ECF No. 23-2.)  Taken together, these assertions suggest that the Alliance's Coordinators and Leads were subject to a common policy, scheme, or plan that deprived them of overtime wages to which they were entitled.  *See Randolph*, 7 F. Supp. 3d 576 (granting motion for conditional certification of traffic controllers (or "flaggers") who worked in different locations where there was evidence a supervisor stated that the defendant "'doesn't pay overtime' as a matter of policy"); *Butler*, 876 F. Supp. 2d at 568 (granting motion for conditional certification of satellite dish installation technicians where, among other things, a supervisor told technicians "not to record more than 40 hours per week on their timesheets").

In response, Alliance first argues that Coordinators and Leads cannot be similarly situated to each other because Leads have certain responsibilities Coordinators do not, Coordinators work at some Alliance locations where Leads do not, and the two positions have different pay scales.  This argument fails.  "Plaintiffs do not have to show that the potential class members have identical positions for conditional certification; plaintiffs can be similarly situated even though there are distinctions in their job titles, functions, or pay." *Robinson v. Empire Equity Grp., Inc.*, WDQ-09-1603, 2009 WL 4018560, at *3 (D. Md. Nov. 18, 2009)[3] (quoting *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848-49 (N.D. Ill. 2008)).  The question is whether they are similarly situated in a way that suggests they were victims of a common policy, scheme, or plan that violated the FLSA.  If the plaintiffs have offered enough evidence for the court to make such a determination, and if differences between individuals (whether with the same job or different job titles) do not make clear that a collective action would be unmanageable, *see Syrja*, 756 F. Supp. 2d at 688 (denying a motion to certify a collective action

---

[3] Unpublished cases are cited for the persuasiveness of their reasoning, not for any precedential value.

where there existed "an unmanageable assortment of individualized factual inquiries"), a notice-stage certification is appropriate.  The plaintiffs have made the required factual showing.

Alliance cites *Bouthner v. Cleveland Const., Inc.*, RDB-11-0244, 2012 WL 738578 (D. Md. Mar. 5, 2012), to support its view that employees with different job titles cannot be similarly situated.  But the issue in *Bouthner* was not that the three party plaintiffs had different job titles (in fact, nowhere are their job titles mentioned).  Rather, the plaintiffs' motion to conditionally certify a collective action suffered from numerous other deficiencies: it was supported only by "three one-page declarations" that contained "meager factual support," *id.* at *5; it "completely failed to identify any company plan or policy . . . violative of the FLSA's overtime provisions," *id.*; and it presented serious manageability issues, *see id.* at *6 (noting that the plaintiffs had sued eight defendants, and the case "involve[d] two separate construction sites, a general contractor, three subcontractors, and individual Plaintiffs that worked at different locations for different combinations of employers").  The plaintiffs here have offered detailed, consistent declarations; have described in detail the overwork, understaffing, and instructions to underreport hours that allegedly comprised the unlawful policy; and though the case involves multiple locations, Alliance is the only defendant.  *Bouthner* is therefore inapposite.

Alliance next disputes the facts asserted in the plaintiffs' declarations—including whether Coordinators, in addition to Leads, were required to carry an "on-call" phone—and supports its version of the facts with the declaration of its human resources director, Barbara Scott.  But "factual disputes do not negate the appropriateness of court-facilitated notice." *Quinteros*, 532 F. Supp. 2d at 772. This argument therefore fails.

In the alternative, Alliance argues that if the court conditionally certifies a class of

Coordinators and Leads, the class should be limited to those who worked at Alliance's location in Belcamp because none of the party plaintiffs worked elsewhere. Alliance also attacks the sufficiency of the plaintiffs' statements that their knowledge of violations at Alliance's non-Belcamp facilities was obtained "through [their] employment[.]" (*See, e.g.*, Tucker Decl. ¶ 14.) In Alliance's view, the plaintiffs must offer more to establish personal knowledge of pay practices at non-Belcamp locations. But King's declaration makes clear she discussed the alleged FLSA violations with Coordinators who worked at Alliance facilities other than the Belcamp facility, and these individuals indicated that they were subject to the same practices. This argument therefore fails. *See Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 826 (D. Md. 2012) (granting motion for conditional certification where, on "the limited discovery record," there was "some evidentiary basis" that the defendant health care hospital's practices extended to "all three shifts and . . . all units of the facility"); *Williams v. ezStorage Corp.*, RDB-10-3335, 2011 WL 1539941, at *3 (D. Md. Apr. 21, 2011) (granting motion for conditional certification where the plaintiff's affidavit indicated "he personally talked" with other employees "who also complained of uncompensated work demands" imposed by their supervisors) .

The cases Alliance cites in support of its alternative argument are inapposite. In *Calder v. GGC-Baltimore, LLC*, BPG-12-2350, 2013 WL 3441178 (D. Md. July 8, 2013), for example, this court granted a motion for conditional certification relating to one workplace, but limited it to the four months the plaintiff worked there because her affidavit made no allegation as to the defendant's pay practices before her employment began. *Calder* does not suggest that conversations with other workers are an insufficient means of carrying a plaintiff's burden at the

notice stage; indeed, it suggests the opposite. *See id.* at *2 n.1 ("[H]earsay that may be inadmissible at trial may be considered at the notice stage where the affiant has knowledge of the statement.").

Accordingly, the court will grant the plaintiffs' motion for conditional certification of a class of all Coordinators and Leads employed by Alliance in Maryland since November 2011.[4]

## II. Notice

Where the court has conditionally certified a collective action, it has "broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Butler*, 876 F. Supp. 2d at 574 (citation omitted). *See also Calder*, 2013 WL 3441178, at *3 ("So as to facilitate that notice, defendant is directed to supply plaintiffs with identifying information for the potential plaintiffs, to include full name, last known residential address, and last known e-mail address."). The plaintiffs have requested that the parties be given seven days to confer and determine if they can agree to the notice's content. The court will so order, though it retains the ability to modify any proposed notice. If the parties are unable to agree to the notice's content, the plaintiffs are directed to file their proposed notice no later than May 22, 2015, and Alliance may file its proposed notice no later than May 29, 2015.

---

[4] Alliance argues that Coordinators work in only three of its locations, and Leads work in only one. Therefore, Alliance says, there is no reason to provide notice to any Alliance employees in facilities where Coordinators and Leads do not work. The court will authorize notice only to Coordinators and Leads. If, as Alliance represents, Coordinators and Leads work only at particular Alliance locations, workers at only those locations will receive notice.

## CONCLUSION

For the reasons stated above, the plaintiffs' motion for conditional certification and for the court's assistance in identifying and notifying similarly situated employees will be granted. A separate order follows.

<u>May 7, 2015</u>                                             <u>       /S/                                    </u>
Date                                                                Catherine C. Blake
                                                                           United States District Judge